the court to reverse and remand for a new trial. The district court committed reversible error by denying Spotted Horse's request to seat the alternate juror in the place of the emotionally distraught juror and by denying his request to have an individual voir dire with the juror before making this decision. It's undisputed from the record that this juror was emotionally distraught. Defense counsel saw that she was crying while exhibits 1 through 14 That's correct the alleged child pornography. But not until after the testimony at the close evidence right? The defense counsel raised it on on the recorded record after the close of evidence. Exactly and so shouldn't the problem be addressed? Listen I mean in these cases there are distraught jurors all the time. I mean you know if you get to the point where they're showing a baby being raped and screams and hollering and it's in open court people are distraught right? And sometimes people are in tears and we just don't get rid of all the jurors who happen to have a human reaction to what is a horrible crime right? Now if there's something going on at that precise moment that is different in degree and kind than what we usually see why wasn't that brought up immediately following the production of that evidence? You know instead this looks like the worst kind of juror shopping that you wait to the very end and you wait to see what happens and then you toss it out at the close evidence. Isn't the right thing to say hey judge I don't know if you noticed but juror 13 looked like she was a mess and not just the ordinary and average kind of mess. That woman looks like she is really really really struggling and we ought to be looking at the alternate at this point. Because it very little opportunity for anybody to fix it. I can't say why there wasn't an objection in the middle of the witnesses testimony. I can say that this. We're right at the end of that witnesses testimony. This was the last witness. Was that the last witness? She was the last witness yes and defense counsel brought this up on the record the very first thing the next morning. So the jury was released right after Holly Strand the expert witness who did bring in the child. And that's what I thought there's a delay though there's you you wait I mean I don't get this. I don't get this. Why is it not just juror shopping? It's not just juror shopping because it isn't just that we're asking for every emotional juror to be removed from a case automatically. Defense counsel said look her level of emotional distress raises questions in my mind that we need to vaudeville her to make sure that she can remain fair and impartial. And the district court didn't do that. And I think that makes it so that we can't say that there's no abuse of discretion here because because we just can't say that that juror could continue to decide the case fairly and impartially. And so I think to circle back on the question of whether this was adequately preserved or whether it was an appropriate time to do it. I don't understand what the voir dire would have been. Is it clarified in the record? Defense counsel specifically asked to make sure that she could exercise her duty to be fair and impartial notwithstanding what she saw in those images. So he's raising a specific concern. That's not a proper question. I think that I mean if if the jurors if the jurors were disobeying instruction not to not to talk to each other about the evidence until they're in deliberations that's one thing. But you don't get to call it you know you get to ask every juror in the middle of the trial have you made up your mind yet? If there's a concern that a particular juror is not able to make a decision based on the law and evidence fairly and impartially it is appropriate to ask to have an individual question with that juror. Have you got any case where where a jurors reaction to the evidence that to the trial evidence prompted this kind of voir dire? An exclusion because the juror had reacted to the evidence? I don't. There are cases about general levels of . . . Doesn't the proposition sound wrong? I'll answer that by circling back to we're not asking for every emotionally distraught juror to be automatically removed. We're saying that where it's bad enough that defense counsel notices it and is willing to make a record and to ask to call the juror and individually and question her where the courtroom . . . Lawyers do that all the time. That's an absurdly unworkable standard. It wasn't just defense counsel here it was the courtroom clerk noticed her level of distress and approached her individually to see if she needed a break before continuing with the trial. The district court also said in his words that she's obviously emotionally distraught and so our . . . What's wrong with that? And then defense counsel raised a specific concern. So you've got, I mean people have different, show different emotions all the time. So you're saying that every time a juror is outwardly emotional as opposed to inwardly seething and somebody says, oh judge now you got a voir dire whether he or she can remain with us or is overreacting to the evidence. Doesn't that sound like absolutely contrary to our jury trial system? I think the goal of the jury trial system is to have a fair and impartial jury and defense counsel was concerned . . . Fair and impartial jurors react to the evidence and decide accordingly. That's their mission. That's what they're told to do. And we're not saying that they shouldn't be taking in the evidence as the case is going on. We're saying that where there's such a level of emotional distress that multiple people in the courtroom are noticing and approaching the juror, that that raises concerns. Give me an authority. I mean give me a state court intermediate decision that's ever hinted at this necessity. No I don't have specific authority for, that puts all the pieces together here about a juror's emotional distress in the middle of trial leading to an individual questioning. There are cases about a juror's general level of distress being a reason to remove the juror from trial. And again that's a slightly different scenario. And there are . . . Give me your best case along those lines. That, I believe that is the Campbell case, but I can confirm that. Excuse me, the Cannon case. And it is cited at least in the reply brief. I would also point this court to the Jones case. And that's a case where this was in the pre-trial body or the initial jury questioning. The juror said that she believed that law enforcement witnesses would be more credible or more believable. And there was no continued questioning of her in that . . . It's a completely different circumstance. A witness during trial. Now, what comes out in void air in the selection of jurors raises completely different issues than what's raised at the end of the trial. I would link the two scenarios by saying that they both go to the question of bias or a person's inability to remain fair and impartial and evaluate the evidence that way. But counsel, one of those is prospective. And what you're talking about is retrospective. And I think there's a big difference. I guess in terms of the standards that we apply that there needs to be a legitimate basis in the record to retain the juror and that we look at the individual questioning to see if that person can rehabilitate themselves or say that I can remain fair and impartial to the satisfaction of the district court judge. Those standards are the same in the two scenarios. And so this is a situation where defense counsel had concerns about this juror's ability to decide the evidence fairly and impartially that came up during trial. He maybe could have made the objection on the record that afternoon. He didn't make it first thing the next morning before the closing arguments, before the jury instructions. He did continue to make . . . I don't see how, again, I don't see how being emotional has any relevance to whether you're fair and impartial. I think that's . . . A fair and impartial juror may or may not be emotional as to particular evidence or a particular party. I think that . . . There's no link to me. I think that's true as a general matter. But the concern here is that the district court denied the request to question the juror. She very well could have said, yes, I'm upset, but I'll remain . . . But you just told me you wanted to ask, can you still be fair and impartial even though you're crying in the jury box? That's right. She could have said yes, and if that happened, then the district court's decision would have been afforded a high level of deference by this court. Well, but actually . . . But she didn't have a chance to say that. She could have said that . . . she could have said differently. I mean, now we're badgering the jurors. Well, actually, something similar to that did in fact happen, right? Because you've got in the transcript, Judge Korman says, I am not going to conduct an individual voir dire, but I'm going to make an inquiry. And he does, in fact, make the inquiry on page 279 of the transcript where he asks the question, are you able to proceed with no problem to all the jurors? And nobody volunteered that they were under such emotional distress that they couldn't do anything. I mean, now it might have been worded a little differently, but I mean, this is not a case where there's absolutely no inquiry. And so the question really is, did he abuse his discretion by not making any further inquiry? He did abuse his discretion because that inquiry gets at just are you feeling okay? Is everybody able to proceed with no problem? Everybody feels okay? That doesn't get at the questions of fairness and impartiality. The judge has to deal with twelve jurors. And if you want to mess up a case, place concentration on one juror. And that's going to have a dramatically different effect than doing what just exactly Judge Korman did. He asked all the jurors if they could proceed. And in doing that, it's inclusive of the emotional juror. I just can't see where he should be drilling down on this one juror because it's an incredible way, frankly, to prejudice the jury. To be clear, he was asking for an individual questioning outside the presence of the rest of the jury. I think that might have been assumed in your case, but it's not that clear. You don't think that would be known? That's right. I think the rest of the jurors are . . . The second you do that, the rest of the jurors, they start speculating. It's dangerous territory. It may well be, but having a juror who is potentially biased based on her reaction to the evidence is at risk of denying the defendant a right to a fair and impartial jury. And so I want to return to that check-in that the District Court did do with the jurors. Again, it's not adequate because it didn't get at the question of can you continue to remain fair and impartial, notwithstanding what you've seen here. There's no indication that any of the jurors responded. There's no show of hands. There's certainly no verbal responses. No indication that anybody nodded yes or no. So it just doesn't get at the concern here. There are general concerns with jurors that come up during trial about life circumstances, or I'm not feeling well, or I've got a time pressure, I have children at home, or somebody to take care of, something like that. Those are the concerns that are afforded a clear abuse of discretion standard. And that seems like that question is getting at. It's not getting at the question of whether there was a fair and impartial jury. You know, these types of cases are always hard. I mean, they're hard to select jurors. There's a lot of jurors that just feel like I just can't do this. There are lots of people that find it . . . I mean, if we really just said anybody here feel uncomfortable about making a decision on this particular case, whether they feel like they've been . . . I mean, that's a problem, right? I mean, it's always a problem in these kinds of cases. I mean, you know, in these kinds of cases, we routinely tell people that they may have . . . that we have available an employee assistance plan that they're covered by, and if they feel they need to have counseling. And so, it's well within the purview when you watch people engage in horrible acts of violence against children, and then we ask other people to view that and make a decision. I mean, by nature, they're people distraught all the time. And I'm just having a hard time figuring out like what this judge could have done that would have gotten to your problem without causing just a whole mess of other problems, right? I mean, you could end up with like 11 of them saying, no, at this point, I can't be fair and impartial because he's guilty of sin. Now, they've heard all the evidence and they've heard all the arguments at that point. They're perfectly free to hold that opinion, right? That's true, yes. Yeah, you know, but I think you open this thing up at this late stage, it's a problem. And I think the solution that defense counsel was proposing was to . . . Was the difficult nature of the trial they were about to conduct disclosed during voir dire and addressed? You know, I have to be frank, the voir dire was not transcribed in this case. Typically, it would be, don't you think? That's correct. And the jurors would be warned that, you know, this was going to be emotional inaction. They probably were asked, can you fairly serve on a jury that's going to look at this kind of issue or evidence? That's true. And I just want to clarify that our argument is that, I don't know where the line is, but this case crossed that line of somebody's clear emotional distress, giving rise to at least an obligation to check in with the juror and make sure she can still decide the case based on the evidence before her, and fairly and impartially, instead of a bias that just rose up inside of her, understandable as it may be, as a result of viewing the evidence. I would reserve the remainder of her rebuttal. Thank you. Good morning, Your Honors Counsel. May it please the Court again, my name is Troy Morley, and I'm here for the United States. In this prosecution under 18 United States Code Sections 2252 and 2256, the evidence of guilt was really overwhelming. You know, Mr. Spotted Horse gave a confession to the FBI in this matter, and you know, if you look at the transcript, and if you look at his confession, he confessed that there were computers in his room, that he used TOR, which stands for the Onion Router. This was like an education, I think, for myself, Judge Corman, and everyone on these terms. TOR, when he served online, he knew that this was a federal case. He would probably end up sitting behind bars. He felt guilty when he saw things he shouldn't. He used programs to erase his memory, and he knew that he was being viewed. The children in the images were between the ages of 10 to 17, that he had been viewing the images for two to three years. During that time frame, he was viewing child pornography approximately three to five times a month. He began looking at the images out of curiosity. He set up the computer hard drives in a RAID configuration. He knew how to tink with computers. He viewed child pornography. The only issue that's been argued this morning is the distraught juror. Is there a harmless error? Is that even relevant to this issue? Would overwhelming evidence of guilt permit us to disregard if that was a reversible error? I don't think harmless error applies to this issue. I'm looking to see if I argued harmless error, Judge. I don't believe I did. My notes don't indicate that. I don't indicate that it does. It is under an abuse of a discretion standard. If we want to talk about the distraught juror, Judge . . . Do I have to do anything? Yes. I mean, we're here for other things, but the rest is on the briefs unless you want to open them up. No, Judge. To be frank, I didn't even notice the juror crying. This wasn't a juror wailing in the courtroom. Well, that's not on the record. That I didn't notice? I can't remember if I responded . . . It is, but . . . It might be. I can't remember if I responded when they brought it up that I didn't even notice, but there's nothing in there that she was wailing. There's no pauses in the proceedings. There's nothing showing by the defense that she stopped and started glaring at the defendant. We are making a leap that she couldn't make a disconnect that she was just looking at images of horrific crimes happening to children. Did this gentleman possess them? Did Mr. Spotted Horse possess them? There's nothing, nothing in the record saying she was looking at the images, started crying, and immediately glared at Mr. Spotted Horse, immediately directed her anguish at Mr. Spotted Horse. She was looking at photographs. She was looking at photographs of unspeakable crimes against children, and she showed emotion. As you've noted, Judge Loken, we don't require jurors to be robots. They're not told they have to check their emotion. If a juror laughs during testimony, we don't individually voir dire. If a juror smiles at a response of a witness at the stand, on the stand, we don't start to individually voir dire them. This juror saw an image. People observed the fact that she was crying. This juror didn't feel she needed a break. A break wasn't taken. There's no break indicated in the trial at the behest of this juror. The trial went on. The evidence went on. Again, this wasn't brought up until the very end. There's nothing in the record that shows that she directed her anguish, her grief directly at Mr. Spotted Horse. There's nothing showing she prejudged. There's nothing showing that this juror had made up their mind. When asked if everyone was able to proceed, all the jurors responded they were. And it was at that time the alternate was released. And if I would, I think most of this is covered in the brief, Judge Loken, but there was a quote, and it's United States v. Dale. And it did say that if the record shows a legitimate basis for the district court's decision to retain a juror, there's no abuse of discretion. Judge Corman wasn't going to single this juror out, wasn't going to individually voir dire them, but did ask all the jurors if they were able to proceed, if they were able to continue. And they indicated they were. So that is a basis for his decision to not seat the alternate juror. So it was not an abuse of discretion. But it does say, as I recall, that if there is reason to believe that there's been an improper outside influence in the middle of the trial as to a particular juror, there may be a need to interview voir dire or whatever to look into that. Correct. But there's no hint of outside influence here, right? This is reaction to the trial evidence. Correct. This was solely a one-time incident. So I believe you have all the exhibits with the file. And so they were printed out with a cover sheet that had a path directory that covered up the images, and they had to flip them. They were handed to the jury. And this, when she was crying, was when these pictures were being handed out, when she had flipped certain cover sheets over and viewed the images. That's when this crying occurred. It did not occur at any other point during the trial. And again, there's nothing to indicate that it influenced her. There's nothing to indicate that she immediately shot glares or disdain towards the defendant. There's nothing to indicate that it was even an audible outburst that other jurors would have heard, whether she was sitting in front or behind. There's nothing to indicate that other jurors even observed this behavior of this particular jury. Judge Somers At some point Judge Kornman talks about that he makes references, as I said, in chambers. And as I'm looking at this record, we've got this record that we have in front of us. What the heck was going on in chambers? And is there anything that's not in this record that is relevant from the government's point of view? Judge Yards No, Your Honor. Judge Kornman has a lot of in-chamber conferences, and I'm struggling to recall if there, and I don't want to go off the record, outside the record either. She wasn't the trial counsel, but I'm struggling to recall anything. Judge Somers Well, I'm just a little bit concerned about the fact that what we're going on here. It looks to me like there are some super secret in-chambers conversation where people make their real arguments, and then everybody shows up in court, and somebody tosses out a rather abbreviated ruling. And when you had said, well, I think I may have said that I didn't even notice anyone crying, and I'm saying, well, it doesn't look in the record, and then I stumble across the, well, as we said, in chambers, and I'm going, this is just no way to conduct a trial. But that's not between you and I. That's something else. Judge Kornman And, Judge, like I said, I don't recall any in-chamber conference. It might have been when it was brought up for the first time, this particular issue, but it seemed to me that it happened semi-contemporaneously because I rest, the government rested immediately at the conclusion of Ms. Strand's testimony, which is when these exhibits came in. And the defendant also rest. He didn't present any evidence on his own. And typically, there's a sidebar, I know that Judge Kornman does, where the defendant makes his motions at the close of evidence. So, I do not recall an in-chamber. All right. Thank you. There are no other questions for me. I would ask that the guilty verdicts in this case be affirmed. Thank you. Thank you. I would note that defense counsel did make a record on page 235 of the transcript. As each photograph came by, you could tell she would look at it, and you could see the tears coming from her eyes. And I saw at one point after she looked at an image, a photograph, she looked over at my client. So, the record does reflect some linking of the images to the particular defendant in this case. And also, it's undisputed from the record that we have that everybody who addressed it  The courtroom clerk addressed her, and the defense counsel addressed her. The district court referred to her as emotionally distraught. There's nobody who denied seeing this level of distress on the juror. And we would ask that the court reverse and remand for a new trial. Thank you. Thank you, counsel. The case has been clearly and well briefed and argued, and we'll take it under advisement. Does that complete the morning's calendar? Very good. The court will be in recess until further call.